# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-09-00299-CV

**SSC Missouri City Operating Company, LP; SSC Richmond Operating Company, LP; HMG Park Manor of Quail Valley LLC; Rosenberg Health & Rehabilitation Center LP and Nexion Health at Beechnut, Inc., Appellants**

**v.**

**Texas Department of Aging and Disability Services; and Adelaide Horn, individually and in her official capacity as Commissioner of the Texas Department of Aging and Disability Services, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. D-1-GN-08-002660, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING**

### MEMORANDUM OPINION

Appellants SSC Missouri City Operating Company, LP; SSC Richmond Operating Company, LP; HMG Park Manor of Quail Valley LLC; Rosenberg Health & Rehabilitation Center LP and Nexion Health at Beechnut, Inc.—five nursing homes in Fort Bend County, Texas—sought judicial review of a decision by appellees the Texas Department of Aging and Disability Services and Adelaide Horn, individually and in her official capacity as Commissioner of the Department,[1] to grant a community-needs waiver for seventy-five additional Medicaid beds in Fort Bend County, Texas. In two issues, appellants argue that the district court erred in granting summary judgment in favor of the Department because appellants have an inherent right to judicial review of the

---

[1] We refer to appellees collectively as the "Department" unless otherwise noted.

Department's action and appellants were entitled to judicial review under the Uniform Declaratory Judgments Act. Finding no error in the district court's grant of summary judgment in favor of the Department, we affirm.

## BACKGROUND

The legislature has charged the Department to administer the Medicaid program in Texas to provide health care services for citizens who qualify for Medicaid. Tex. Hum. Res. Code Ann. §§ 32.001-.257 (West 2001 & Supp. 2009). Among the services offered through the Medicaid program is nursing facility, or nursing home, services. To participate in the Medicaid program, a nursing facility must meet certain requirements to become Medicaid certified. 40 Tex. Admin. Code §§ 19.1-.2615 (2009) (Tex. Dep't of Aging & Disability Servs., Nursing Facility Requirements). Once certified, a nursing facility may apply to the Department for an allocation of Medicaid beds to provide nursing home services to qualified Texas citizens. *Id.* § 19.2322.

Pursuant to its delegated authority, the Department is responsible for "controlling the number of Medicaid beds in nursing facilities." Tex. Hum. Res. Code Ann. § 32.0213(a) (West 2001); *see generally ElderCare Props., Inc. v. Texas Dep't of Human Servs.*, 63 S.W.3d 551, 553 (Tex. App.—Austin 2001, pet. denied), *overruled in part by Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 173 (Tex. 2004). In 1985, the Department's predecessor—the Texas Department of Human Services—established a moratorium on allocating additional Medicaid beds in Texas nursing homes. *See ElderCare Props.*, 63 S.W.3d at 553. The moratorium was formally adopted by rule in 1998 and is currently codified in title 40, section 19.2322 of the Texas Administrative Code. *See* 40 Tex. Admin. Code § 19.2322(b). Within this

2

rule, the Department also adopted several exceptions to the moratorium, including the community-needs waiver at issue in this case. *See id.* § 19.2322(g)-(h). The community-needs waiver allows the Department to lift the moratorium and make additional Medicaid beds available when the Department finds that the criteria for granting a community-needs waiver have been met. *Id.*

Appellants operate various nursing facilities in Fort Bend County and neighboring Harris County that are Medicaid certified and have received an allocation of Medicaid beds from the Department. In November 2006, K.D. Gotcher, Inc., requested a community-needs waiver from the Department to provide additional Medicaid beds in Fort Bend County. Appellants filed written comments opposing the requested waiver and arguing that Gotcher had failed to satisfy the criteria necessary to grant a waiver. Appellants also requested a hearing on Gotcher's application for waiver.[2] The Department denied appellants' request for a hearing and granted Gotcher a community-needs waiver for a seventy-five bed Medicaid nursing facility.

Appellants filed suit in a Travis County District Court challenging the Department's decision to grant a waiver to Gotcher. Appellants sought injunctive and declaratory relief. The Department moved for summary judgment on the grounds that the trial court lacked jurisdiction to review the Department's action because neither the statute nor the Department's rules provided for judicial review of the Department's decision to grant a community-needs waiver, appellants did not have an inherent right of judicial review, and there was no basis for jurisdiction under the Uniform

---

[2] Although the Department disputes whether appellants requested a contested case hearing on the waiver application filed by K.D. Gotcher, Inc., the record reflects that appellants' written comments filed with the Department included a request for hearing.

Declaratory Judgments Act. In support of its motion for summary judgment, the Department provided the letter approving Gotcher's waiver request; copies of appellants' incorporation documents; copies of the Medicaid contracts between the Department and appellants for the provision of Medicaid services; and an affidavit from Joe D. Armstrong, Manager, Professional and Technical Review Branch, Regulatory Services Division of DADS. The Department also provided certified copies of the "Plaintiff's Response to Defendant's Motion for Summary Judgment" and the trial court's judgment in *Valley Grande Manor, Inc. v. Texas Department of Human Services*, No. GN-101,221 (Travis County Apr. 14, 2003).

In response, appellants provided summary judgment evidence[3] in an attempt to show that they possessed an inherent right of judicial review because their Medicaid bed allocations and provider agreements were franchises and, therefore, constitutionally protected property rights, that the award of a waiver to Gotcher irreparably damaged their property rights, and that they had requested, but had not been provided, a hearing. Appellants also directed the district court's attention to portions of their petition seeking relief under the UDJA.

The district court granted summary judgment in favor of the Department on April 29, 2009. This appeal followed.

---

[3] Included among the evidence provided by appellants were the affidavits of Greg Lentz, managing member of Healthmark Group, Ltd.'s general partner HM Group, LLC; Robert Kalin, vice-president of operations for SSC Richmond Operating Company, LP's general partner SSC Richmond Operating GP, LLC, and vice-president of operations for SSC Missouri City Operating Company, LP's general partner SSC Missouri Operating GP, LLC; Peter J. Licari, managing member of Rosenberg Health & Rehabilitation Center, LP's general partner Rosenberg Health & Rehabilitation Center GP, LLC; Francis Kirley, chief executive officer of Nexion Health at Beechnut, Inc.; and Kelly A. McDonald, counsel for appellants.

# DISCUSSION

In two issues, appellants contend that the district court erred in granting summary judgment in favor of the Department. First, appellants contend that the district court had jurisdiction over their claims seeking judicial review of the Department's order granting a waiver to Gotcher because appellants had constitutionally protected property rights or franchises in their Medicaid bed allocations and provider agreements previously granted by the Department. Second, appellants contend that the district court had jurisdiction to review the Department's order under the UDJA.

## *Standard of Review*

We review the district court's grant of summary judgment *de novo*. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Where, as here, the district court does not specify the basis for its ruling in its judgment, we may consider any and all summary judgment grounds presented to the district court and preserved for appellate review. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996). The movant has the burden of demonstrating that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). In reviewing a grant of summary judgment, we consider the evidence in the light most favorable to the nonmovant and make every reasonable inference and resolve all doubts in favor of the nonmovant. *Nixon*, 690 S.W.2d at 548-49.

***Judicial Review of the Department's Order***

   *A)      Inherent right to judicial review*

       In their first issue, appellants argue that they possess an inherent right to judicial review of the Department's decision to grant a waiver to Gotcher because the Department's decision adversely affects appellants' vested property rights. In support of this claim, appellants contend that their bed allocations and provider agreements are constitutionally protected franchises, which "entitle them to be free of competition created in violation of the law." Appellants further contend that the Department was without authority to grant the waiver because the mandatory regulatory criteria had not been met.

       As a general rule, there is no right to judicial review of an administrative order unless a statute expressly provides that right or the order violates a constitutional right. *See General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 599 (Tex. 2001); *Continental Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex. 2000); *Firemen's & Policemen's Civil Serv. Comm'n v. Kennedy*, 514 S.W.2d 237, 239-40 (Tex. 1974); *City of Amarillo v. Hancock*, 239 S.W.2d 788, 790-92 (Tex. 1951). The parties agree that no statute provides for judicial review of the Department's decision to grant a community-needs waiver to Gotcher. Appellants, however, maintain that their claims fall within the exception to the general rule because the Department's decision violates appellants' franchise or vested property rights.

*1)*     *Do Appellants' Medicaid bed allocations and provider agreements constitute a franchise?*

As part of their argument that they are entitled to an inherent right of judicial review, appellants contend that their Medicaid bed allocations coupled with their contractual provider agreements constitute a franchise. This Court confronted a similar argument in *ElderCare Properties, Inc. v. Texas Department of Human Services* but, finding that ElderCare had waived the argument, we declined to address it. *See* 63 S.W.3d at 555. In *ElderCare*, this Court noted, however, that "[a] line of cases recognizes a right to judicial review, even in the absence of state deprivation of a vested right when the vested right at issue is a franchise, or tantamount to a franchise." *Id.* (citing *Chemical Bank & Trust Co. v. Falkner*, 369 S.W.2d 427 (Tex. 1963); *Brazosport Sav. & Loan Ass'n v. American Sav. & Loan Ass'n*, 342 S.W.2d 747 (Tex. 1961); *White Top Cab Co. v. City of Houston*, 440 S.W.2d 732 (Tex. Civ. App.—Houston [14th Dist.] 1969, no writ)). We thus consider as a matter of first impression whether appellants' Medicaid bed allocations and provider agreements constitute a franchise.

There is nothing in the statute, the Department's rules, or appellants' provider agreements suggesting that appellants' Medicaid bed allocations or provider agreements constitute franchises. Under Texas law, a contractual grant of a franchise must be clear, unambiguous, and unequivocal. *See State v. Operating Contractors ABS Emissions, Inc.*, 985 S.W.2d 646, 653 (Tex. App.—Austin 1999, pet. denied). As this Court explained in *Operating Contractors*, "Franchises under Texas case law generally take the form of utilities, or other monopolies, created to further the public interest." *Id.* (citing *Texas Power & Light v. City of Garland*, 431 S.W.2d 511 (Tex. 1968) (electric utility); *Brazosport Sav. & Loan Ass'n v. American Sav. & Loan Ass'n*,

342 S.W.2d 747 (Tex. 1961) (savings and loan associations); *City of Jacksonville v. General Tel. Co.*, 538 S.W.2d 253 (Tex. Civ. App.—Tyler 1976, writ ref'd n.r.e.) (telephone utility)). Moreover, "[o]ne who claims a franchise right or privilege in derogation of the common rights of the public must prove his title thereto by a grant clearly and definitely expressed, and cannot enlarge it by equivocal or doubtful provisions or probable inferences." *Id.* (citing *Incorporated Town of Hempstead v. Gulf States Utils. Co.*, 206 S.W.2d 227, 230 (Tex. 1947)). Applying this standard to appellants' Medicaid bed allocations and provider agreements makes clear that the Department could not and did not award franchises to appellants.

In section 32.0213 of the human resources code, the legislature charged the Department to establish procedures for controlling the number of Medicaid beds in Texas nursing facilities. *See* Tex. Hum. Res. Code Ann. § 32.0213. Section 32.0213 states:

(a)     The department by rule shall establish procedures for:

(1)     controlling the number of Medicaid beds in nursing facilities;

(2)     decertification of unused Medicaid beds in nursing facilities; and

(3)     reallocation of nursing home beds decertified under Subdivision (2) to other nursing facilities.

(b)     The procedures established under this section must take into account the occupancy rate of the nursing facility.

(c)     The department may exempt a nursing facility from the procedures established under this section if the facility:

(1)     is affiliated with a state-supported medical school;

(2)     is located on land owned or controlled by the state-supported medical school; and

(3)     serves as a teaching facility for physicians and related health care professionals.

*Id.* Pursuant to its delegated authority, the Department has adopted rules establishing procedures to control the number of Medicaid beds in Texas nursing facilities. *See* 40 Tex. Admin. Code §§ 19.2301-.2326 (2009) (Tex. Dep't of Aging & Disability Servs., Requirements for Medicaid-Certified Facilities). There is nothing in the plain language of section 32.0213 of the human resources code or the Department's rules granting a franchise, much less authorizing the Department to grant a franchise, to Medicaid bed providers. Nor do appellants' provider agreements include any language clearly or unambiguously demonstrating that the Department granted a franchise to appellants by entering into such agreements. We therefore reject appellants' contention that their Medicaid bed allocations and provider agreements are constitutionally protected franchises.

To the extent appellants claim they need not point to specific statutory or contractual language to establish a franchise because their Medicaid bed allocations and provider agreements satisfy all of the elements of a franchise, appellants' argument is without merit. Relying on *Brazosport Saving & Loan Association v. American Savings & Loan Association*, 342 S.W.2d 747 (Tex. 1961), appellants argue that their Medicaid bed allocations and provider argeements should be construed as franchises. The Department responds that appellants' Medicaid bed allocations and provider agreements are more like the licenses considered by the court in *White Top Cab Co. v. City of Houston*, 440 S.W.2d 732 (Tex. Civ. App.—Houston [14th Dist.] 1969, no writ).

According to appellants, the combination of a Medicaid bed allocation and provider agreement should be construed as a franchise because the bed allocation coupled with a provider

9

agreement is an "exclusive privilege[ ] granted by the government in an area of public interest for purposes of economic regulation rather than quality regulation." Appellants contend that, like a franchise, their Medicaid bed allocations and provider agreements possess the following characteristics: exclusivity, public interest, and economic but not quality regulation.

Although we agree that Medicaid bed allocations and provider agreements concern an area of public interest, we are unpersuaded by appellants' exclusivity and economic but not quality regulation arguments. With regard to exclusivity, appellants recognize in their briefing to this Court that the Department's rules allow the Department to grant waivers to the moratorium on Medicaid beds for a variety of circumstances, including community needs. *See, e.g.*, 40 Tex. Admin. Code § 19.2322(h) (allowing waivers for community needs; criminal justice; under-served minorities; Alzheimer's; teaching nursing facilities; rural counties; and state veterans homes). And, by virtue of appellants' own Medicaid bed allocations, appellants also recognize that there are multiple Medicaid bed providers throughout the state and in Harris and Fort Bend Counties in particular. Likewise, there is nothing in the statute or the Department's rules that would prevent the Department from granting additional waivers in appropriate circumstances. Thus, appellants cannot claim to be exclusive providers of Medicaid bed services even in the limited area of Harris and Fort Bend Counties.

In addition, the legislature has expressly provided both economic *and* quality regulation in the area of Medicaid services. Section 32.001 of the human resources code states that the purpose of the medical assistance program, including the provision of Medicaid beds in Texas nursing facilities, is "to provide medical assistance on behalf of needy individuals and to enable the

10

state to obtain all benefits for those persons authorized under the Social Security Act or any other federal act." Tex. Hum. Res. Code Ann. § 32.001 (West 2001). And section 32.002 of the human resources code states that chapter 32 "shall be liberally construed and applied in relation to applicable federal laws and regulations so that *adequate and high quality health care* may be made available to all children and adults who need the care and are not financially able to pay for it." *Id.* § 32.002 (emphasis added). The legislature has also stated its intent that the Department encourage competition among contracted nursing facilities. *See, e.g.*, General Appropriations Act, 75th Leg., R.S., ch. 1452, 1997 Tex. Gen. Laws 5535, 5695 (Rider 7 to 1997 General Appropriations Act, Department of Human Services). Further, subsection 19.2322(b) of the Department's rules states, "The purpose of this section is to control the number of Medicaid beds for which [the Department] contracts, to improve the quality of resident care by selective and limited allocation of Medicaid beds, and to promote competition." *See* 40 Tex. Admin. Code § 19.2322(b). We therefore conclude that appellants' Medicaid bed allocations and provider agreements do not share the "exclusivity" and "economic but not quality regulation" elements of a franchise.

To the extent appellants raise additional arguments in support of their claim that Medicaid bed allocations and provider agreements should be construed as a franchise and not a license, we likewise reject those arguments. Although appellants argue that franchises are limited in number, whereas licenses are unlimited, there is nothing in the statute or the Department's rules that would prevent the Department from granting additional Medicaid bed allocations in appropriate circumstances. Appellants also argue that licenses are temporary and revocable, and franchises are not, but appellants ignore section 32.034 of the human resources code, which expressly allows the

11

Department to cancel or revoke a Medicaid provider agreement after notice and hearing. *See* Tex. Hum. Res. Code Ann. § 32.034 (West 2001).

We reject appellants' argument that their Medicaid bed allocations and provider agreements constitute franchises.

2) *Do appellants' Medicaid bed allocations and provider agreements constitute vested property rights?*

Relying on *Texas State Department of Human Resources v. Silver Threads Co.*, 569 S.W.2d 49 (Tex. Civ. App.—Austin 1978, writ ref'd n.r.e.), appellants contend that they are entitled to judicial review because the Department's decision granting a community-needs waiver to Gotcher adversely affects appellants' Medicaid bed allocations and provider agreements, which are vested property rights. Appellants' reliance on *Silver Threads* is misplaced.

In *Silver Threads*, the state sought to cancel Silver Threads' provider contract on the ground that Silver Threads had breached the agreement. *Id.* at 50. After a hearing, the Commissioner determined that just cause existed for cancellation based on Silver Threads' breach of the contract's reporting requirements. *Id.* On appeal, the state argued that the trial court had erred in denying the state's plea in abatement on the ground that the relevant statutes did not provide for judicial review. *Id.* at 51. The appellate court rejected the state's argument finding that the legislature's 1967 amendment to Section 9A of the Texas Medical Assistance Act expressly provided for judicial review of the state's decision to cancel Silver Threads' contract. *Id.* The court acknowledged that its holding was consistent with "long settled law of this State that where a vested property right has been affected by the action of an administrative agency, thereby invoking the

protection of due process of law, there is an inherent right of appeal." *Id.* (citing *Chemical Bank & Trust v. Falkner*, *supra*, and *Brazosport Sav. & Loan Ass'n v. American Sav. & Loan Ass'n*, *supra*). The court also stated, "In our judgment appellee's right to a valuable contract constitutes a vested property right." *Id.*

Thus, *Silver Threads* is distinguishable because it addressed the cancellation of a provider's contract with the state for which it sought and received a hearing. We disagree with appellants' contention that its rights were adversely affected by the Department's decision to grant a community-needs waiver to Gotcher so as to trigger the requirement of a hearing and judicial review. *See ElderCare*, 63 S.W.3d at 555-56 (rejecting claim that Department's decision to grant waiver to nursing facility's competitor adversely affects vested property rights). Appellants have not alleged that the Department has cancelled or taken any action against appellants' Medicaid bed allocations or provider agreements. Nor is there evidence in the record before us that the Department sought to revoke appellants' Medicaid bed allocations or cancel appellants' provider agreements.

Moreover, in *ElderCare*, this Court previously rejected the argument that nursing facilities like appellants have a vested property right in a certain occupancy rate. *See id.* Like the petitioner in *ElderCare*, appellants complain that the Department's decision to grant a waiver to Gotcher will decrease the occupancy rate of appellants' Medicaid beds. *See id.* at 556. Citing *S.C. San Antonio, Inc. v. Texas Department Human Services*, 891 S.W.2d 773 (Tex. App.—Austin 1995, writ denied), this Court concluded that the petitioner's claim was "no more than a mere expectation" and did not rise to the level of a vested property right entitling ElderCare to judicial review. *See* 63 S.W.3d at 556. For the same reasons, we conclude that appellants' claim that they are subject to

13

increased competition and lower occupancy rates of their Medicaid beds by virtue of the Department's decision to grant a waiver to Gotcher is no more than a mere expectation and does not rise to the level of a vested property right entitling appellants to judicial review.[4] *See id.* We overrule appellants' first issue.

### B)    *Judicial review under the UDJA*

In their second issue, appellants contend that the district court had jurisdiction to consider their claims under the UDJA to determine whether the Department acted outside its scope of authority in granting a waiver to Gotcher.  The Department counters that the true nature of appellants' complaint is not that the Department lacked authority to grant the waiver to Gotcher, but that the Department erred in granting a waiver to Gotcher in violation of the Department's own rules. Because the Department acted within its statutory authority and discretion to grant the Gotcher waiver, the Department argues that the district court lacked jurisdiction under the UDJA and properly granted summary judgment against appellants.

It is well established that the UDJA is "merely a procedural device for deciding cases already within a court's jurisdiction."[5] *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993).  "A litigant's request for declaratory relief cannot confer

---

[4] Finding no franchise or vested property right adversely affected by the Department's decision to grant a waiver to Gotcher, we also reject appellants' claim that they were entitled to a contested case hearing. *Cf.* Tex. Hum. Res. Code Ann. § 32.034 (West 2001) (providing for notice and hearing where the Department seeks to revoke or cancel Medicaid contract).

[5] For this reason, in the absence of franchise or vested property rights entitling appellants to an inherent right of review, the UDJA cannot independently confer jurisdiction over appellants' claims for judicial review. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993).

jurisdiction on the court, nor can it change the basic character of a suit." *State v. Morales*, 869 S.W.2d 941, 947 (Tex. 1994). Nevertheless, Texas courts have recognized that the UDJA may be used in appropriate circumstances to "seek declaratory relief against state officials who allegedly act without legal or statutory authority," *see Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002), but it may not be used to control or reverse a discretionary agency decision when no statute authorizes judicial review of that decision. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 371-72 (Tex. 2009).

In *City of El Paso v. Heinrich*, the supreme court recently explained the distinction between permissible declaratory judgment suits against state officials and impermissible suits barred by sovereign immunity. *See* 284 S.W.3d at 371-72. The supreme court concluded that "suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity, even if a declaration to that effect compels the payment of money." *Id.* at 372. "To fall within this *ultra vires* exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.*

In this case, appellants do not dispute the Department's statutory authority to grant the Gotcher waiver. *See* Tex. Hum. Res. Code Ann. § 32.0213 (authorizing Department to control number of Medicaid beds in Texas nursing facilities). Appellants simply argue that the Department erred in exercising its authority to do so when none of the regulatory criteria had been met. Because appellants complaint is in essence that the Department erred in the exercise of its undisputed statutory authority to grant the waiver, appellants fail to allege a permissible claim for declaratory

15

relief—i.e., appellants' claim for declaratory relief against the Department does not fall within the *ultra vires* exception to those claims barred by sovereign immunity.

Based on the supreme court's holding in *Heinrich*, we conclude that appellants' claims for declaratory relief are barred by sovereign immunity, *see* 284 S.W.3d at 371-72, and we overrule appellants' second issue.

## CONCLUSION

Having considered and overruled appellants' issues, and finding no error, we affirm the district court's grant of summary judgment in favor of the Department.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed:   December 8, 2009